c

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBI MISHRA, individually and on behalf of all those similarly situated,<br><br>              Plaintiff,<br><br>     v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION; COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION,<br><br>              Defendants. | Case No. 2:17-cv-01785-TLN-EFB<br><br><br>**ORDER GRANTING PROVISIONAL CERTIFICATION OF CLASS ACTION; PRELIMINARY APPROVAL OF SETTLEMENT; SETTING HEARING FOR FINAL APPROVAL; ASSOCIATED APPOINTMENTS** |

The matter is before the Court on Plaintiff Debi Mishra's ("Plaintiff") motion for preliminary approval of class action settlement reached with Defendants Cognizant Technology Solutions U.S. Corporation and Cognizant Technology Solutions Corporation (collectively, "Defendants").  (ECF No. 20.)  The motion is not opposed.  After careful examination of the motion, the AMENDED Settlement Agreement, AMENDED notices, and all related filings, and for the reasons set forth below, the motion is hereby GRANTED.

///

///

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendants are an information technology services company providing consulting services to a wide variety of businesses.  One service Defendants provide is Quality Engineering & Assurance ("QE&A"), which includes quality assurance testing for their clients.  The employees at issue in this lawsuit are or were part of Defendants' QE&A "Testing" group.

### a.  Plaintiff's Claims

During the relevant time period, Cognizant Technology Solutions U.S. Corporation employed Plaintiff as a Testing Analyst performing quality assurance testing services onsite at Defendants' client, Blue Shield of California.  Plaintiff worked in that capacity until he resigned effective September 4, 2015.  Plaintiff contends that following a 2012 reclassification, Defendants allegedly underpaid overtime to Class Members by failing to include certain amounts when calculating the regular rate of pay.  Specifically, Plaintiff alleges that on August 16, 2012, Plaintiff received a letter providing notice that the terms and conditions of his employment had changed.  Defendants therein informed Plaintiff that his "position has been classified as overtime-eligible."  Plaintiff contends the letter went on to explain that his duties and compensation would essentially remain the same, but he would now be paid based on "several components," including base pay, a cost of living adjustment, and overtime, plus a "bonus."  This bonus was referred to as a "Tru Up" payment.  Plaintiff's overtime would be paid at $32.27 per hour.  Plaintiff contends his annual base income at 40 hours of work per week was set at $39,663.65 plus a cost of living adjustment of $5,500, amounting to an annual wage of $45,163.65.  At 52 weeks per year, Plaintiff's annual wage-salary was $21.71 per hour.  Multiplying this by 1.5 would result in an overtime rate of $32.57, which is the overtime rate Plaintiff contends is stated in Defendants' notice letter.

Plaintiff also alleges, however, that the letter indicated Plaintiff was guaranteed to earn "no less than $62,100," and that the bonus would be added to keep his annual income at this level.  Plaintiff contends — and Defendants deny — that if the total income were used to calculate the

---

[1]     Unless otherwise noted, the following facts are taken, often verbatim, from Plaintiff's Memorandum of Points and Authorities filed in support of the instant Motion.  (ECF No. 20-1.)

overtime rate, as Plaintiff contends is required, then Plaintiff's overtime rate should have been $44.78.  Based on this theory, Plaintiff contends that every time Plaintiff put in an hour of overtime, he was allegedly underpaid by $12.21.  The Tru Up program ended May 21, 2016.

As part of their investigations related to this action, Plaintiff's counsel retained an expert forensic economist, Jeffrey S. Petersen, Ph.D., to review and analyze Class data.  (ECF No. 20-1 at 13.)  Among other things, Plaintiff's counsel worked with Dr. Petersen to calculate the potential maximum losses under Plaintiff's various theories of recovery.  (ECF No. 20-1 at 13.)  The total potential damages according to calculations by Dr. Petersen is $11,219,891.  (ECF No. 20-1 at 13.)  As described in more detail below, Defendants reject this analysis, deny that Plaintiff and/or the Class Members are owed any additional wages, and, among other defenses, contend that Plaintiff and the Class Members did not actually work overtime hours and instead merely recorded overtime as a means of obtaining faster and more evenly spread pay.  (ECF No. 20-1 at 13–14.)

### b.  Defendants Deny Plaintiff's Claims

Defendants deny Plaintiffs' allegations and have asserted numerous defenses.  Defendants contend Class Members rarely, if ever, worked overtime.  Defendants contend that overtime work was not necessary because they had an offshore team that worked through the off hours.  Defendants claim that following the shift from salaried to nonexempt hourly wages plus Tru Up payments, putative Class Members recorded overtime hours that they did not actually work in order to receive compensation sooner and more evenly across pay periods (i.e., by earning overtime that would be paid out each pay period, rather than receiving only base hourly wages in one pay period followed by a Tru Up payment every four weeks).  Defendants contend a comparison of Class Members' time records before and after Defendants ceased offering Tru Up payments (i.e., May 21, 2016) proves this.  Defendants also contend the putative Class Members fell within the FLSA's computer exemption and therefore would not be entitled to overtime damages under the FLSA.

Further, Defendants contend that individualized issues as to both liability and damages would overwhelm common questions, precluding class certification.  Defendants argue this is

particularly true given that putative Class Members worked exclusively offsite at more than 180 different Cognizant clients and for more than 1,110 different client projects.

### c. Procedural History

Plaintiff filed the original Complaint on August 25, 2017, asserting claims under the FLSA, the California Labor Code, and California's Unfair Competition Law (Cal. Bus. and Prof. Code §17200).  (ECF No. 1.)  On November 3, 2017, Cognizant filed a Motion to Dismiss/Strike. (ECF No. 8.)

On January 31, 2018, in response to the Motion, Plaintiff filed a First Amended Complaint (ECF No. 14), alleging five causes of action: (1) failure to pay overtime wages under the FLSA; (2) failure to pay overtime wages under the California Labor Code; (3) failure to timely pay wages (California Labor Code § 204); (4) violation of California Business and Professions Code § 17200 (unlawful business practices); and (5) violation of § 17200 (unfair business practices).  By way of the FAC, Plaintiff seeks to represent a national FLSA class and a California subclass (together referred to as "the Class" or "Class Members") of current and former employees who were eligible to receive Tru Up payments, as follows:

- The National FLSA Class: All current and past employees of named Defendants, DOES 1 to 10, and each of them who participated in or were paid income subject to the Tru Up program alleged herein within the time period of the relevant statute(s) of limitation.
- The California Class: Those class members who performed work for Defendants, DOES 1 to 10, and each of them such that the sub-class members' work was regulated by the California Labor Code (e.g. resided in and worked in California, or otherwise performed non-trivial amounts of work in California).

(ECF No. 14, ¶ 29(a)-(b).)

The Parties mediated the case before the Honorable William Cahill (Ret.).  In advance of mediation, Defendants produced Plaintiff's personnel file and data reflecting putative Class Members' wage statements and total daily work hours recorded, a payroll legend, as well as information concerning the number of putative Class Members eligible to receive Tru Up

1    payments during the relevant time period, number of workweeks, and number of putative Class

2    Members who resigned or were terminated.  Plaintiff provided documents relating to his

3    employment, including annual compensation letters, wage statements, and timesheets.  (ECF No.

4    20-2, Watson Decl., ¶ 9-10.)

5           On May 29, 2018, the Parties participated in a full day of private mediation before Retired

6    Judge Cahill but did not reach a resolution.  Judge Cahill issued a mediator's proposal on May 30,

7    2018.  After negotiations and a series of counteroffers, the Parties reached an agreement on June

8    8, 2018.  Over the next several months, the Parties extensively negotiated, drafted, and executed a

9    long-form Settlement Agreement that was put before the Court for preliminary approval.  (ECF

10   No. 20-3.)

11          After a thorough review of the proposed settlement and applicable law, the Court issued a

12   Minute Order (ECF No. 25) expressing concern regarding the proposed mechanism for having

13   potential claimants opt into the FLSA components of the proposed settlement.  The Court ordered

14   the Parties to submit written briefs containing legal support for their proposed opt-in process, or

15   in the alternative, invited the Parties to submit an amended settlement agreement correcting the

16   apparent deficiency.  (ECF No. 25.)  On May 11, 2020, the Parties filed a Response to the Court's

17   Minute Order, attaching an Amended Settlement Agreement, amended Notices, an amended

18   FLSA opt-in form, and amended proposed orders.  (ECF No. 26.)  The Amended Settlement

19   Agreement is presently before the Court for preliminary approval.

20          **II.    SUMMARY OF PROPOSED SETTLEMENT**

21          The Court has reviewed the terms of the proposed amended settlement as set forth in the

22   Amended Settlement Agreement and Stipulation.[2]  (ECF No. 26-1.)  A summary of those terms is

23   set forth below.

24   ///

25   ///

26   _____

27   [2]      The Court understands the Amended Settlement Agreement and Stipulation, along with
     the amended Class Notices and any related documents, supersede the original documents
28   submitted to the Court on December 11, 2018 (ECF No. 20).  Any reference to "the Agreement"
     or "Notice" hereafter is to the amended documents submitted May 11, 2020 (ECF No. 26).

1

*a. Material Terms of the Proposed Agreement*

2      This Order incorporates by reference the definitions in the Amended Settlement

3  Agreement, and all terms defined therein shall have the same meaning as set forth therein.

4  Defendants have agreed to pay a total Maximum Settlement Amount of $5,726,000, the entire

5  sum of which will be paid by Defendants.  There is no reversion of money back to Defendants

6  under any circumstance.  This sum includes payments to Class Members, a Fee and Expense

7  Award, an Enhancement Payment to Plaintiff, Administration Costs, and amounts for taxes.

8      Attorney fees and expenses are to be set by the Court in a subsequent motion.  There is no

9  clear sailing provision.  The Agreement provides for up to a 25% Fee Award for Class Counsel,

10  and up to $45,000 in Expenses.  Further, under the Agreement Plaintiff Debi Mishra will receive

11  an Enhancement Payment of up to $10,000 as approved by the Court.  The Agreement also

12  proposes that ILYM Group, Inc. ("ILYM") be appointed as Settlement Administrator.

13      The Class Members are to receive the balance of the Maximum Settlement Amount after

14  deducting Administration Costs, the Fee and Expense Award, the Enhancement Payment, and

15  taxes.  The Net Settlement Amount is estimated to be roughly $4,209,500.  This is 73.5% of the

16  gross recovery.  The "Net Settlement Amount" will be divided among Class Members as set out

17  in the proposed Agreement.  (*See* ECF No. 26-1, ¶ 42.)  The Net Settlement Amount will be

18  allocated 97.2% to the California Class Fund and 2.8% to the FLSA Class Fund.  Of the

19  California Class Fund, 69.2% is allocated to the California Award and 30.8% is allocated to the

20  FLSA Award.  Each of these awards will be distributed to Settlement Class Members on a

21  proportional basis based on the number of California and/or FLSA Class Member Individual

22  Workweeks each Class Member worked.

23      The purported California Class consists of current or former employees of Defendants in

24  California who were eligible to receive Tru Up payments at any time during the California Class

25  Period.  The purported FLSA Class consists of current or former employees of Defendants (either

26  in California or outside California) who were eligible to receive Tru Up payments at any time

27  during the FLSA Class Period.  Members of the California Class may also be members of the

28  FLSA Class and vice versa depending on when the Class Member worked.  To the degree any

1   California Class Members opt out, their California awards are not claimed and will serve to

2   increase payment to the other Class Members.  For this reason, the Settlement Agreement

3   includes a provision that if 10% or more of potential California Class Members opt out,

4   Defendants may opt to back out of the Settlement prior to final approval.  An analogous process

5   is applied to distribute the FLSA Fund among FLSA Class Members.  Further, in any order

6   granting final approval to the Settlement, the FLSA Class Members will be narrowed to only

7   those members who timely opt into the Settlement.

8           If any funds are not distributed (for example, because a check could not be delivered after

9   multiple attempts over a period of 360 days), then the funds will be sent to the applicable state

10  unclaimed property fund unless the Class Member resides in California, in which case such funds

11  will go to the Department of Industrial Relations Unpaid Wage Fund.

12                              *b.  Notice, Objections, and Opt-Outs*

13          The Parties have agreed on the form of the Notices to be mailed to the Class Members,

14  which, with the Change of Address Form, are collectively referred to as the "Notice Packet."

15  ILYM will provide notice to Class Members as provided in the Agreement using contact

16  information provided by Defendants and updated by the Settlement Administrator using skip

17  tracing.  More specifically, Defendants will provide the Settlement Administrator with each Class

18  Member's full name; last known mailing address and telephone number; last known e-mail

19  address (if available); beginning and ending dates of employment; Social Security number; the

20  number of California Class Individual Workweeks that each individual worked; and the number

21  of FLSA Class Member Individual Workweeks that each individual worked (the "Class Member

22  List") within fifteen (15) business days after Preliminary Approval.  The Settlement

23  Administrator shall mail a copy of the Notice Packet within ten (10) business days after receiving

24  the Class Member List spreadsheet.

25          The Notice Packets will include either the California Notice or the FLSA Notice, as well

26  as the Change of Address Form and the FLSA Claim Form.  The Notices provide all necessary

27  information, including the terms of the proposed Settlement, how to opt in or out, and how to

28  object.  The Notice Packet will also explain how a Class Member may dispute his or her ILYM-

calculated number of Individual Workweeks.  Class Members may dispute their calculated Individual Workweeks by sending certain documentation to the Settlement Administrator.

Class Members will have 30 days to object to the Settlement, measured from the date of mailing the Notice Packet.  Class Members may also exclude themselves from the California Class by submitting an Exclusion Letter within 30 days of mailing of the Notice Packet.  Class Members opt into the FLSA Class by filing out an Opt In Form provided with the Notice Packet and mailing it to the Claims Administrator, or by completing an online form.  Potential FLSA Class Members have 60 days from the mailing date of the Notice Packet to opt in.  All California Settlement Class Members will be entitled to their share of the California Class Fund unless they affirmatively decide not to receive it by filing a timely Exclusion Letter.  Class Members will receive funds via check by default.  They may use a website to request direct deposit instead.

The California subclass releases any and all claims under the wage and hour laws and regulations of the state of California that were or could have been asserted based on the conduct alleged in the First Amended Complaint or in any complaints in this action preceding said First Amended Complaint.  The FLSA Class releases any and all claims that were asserted in the First Amended Complaint or that could have been asserted based on the conduct alleged in the First Amended Complaint, or in any complaints in this action preceding said First Amended Complaint.

### III.   PROVISIONAL CLASS CERTIFICATION

Traditional class action certification rules are applicable to the California Labor Code claims and are set out at Federal Rule of Civil Procedure (hereafter, "Rule") 23.  More specifically, for the Court to properly certify a class under Rule 23, a plaintiff must meet the prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b).  Fed. R. Civ. P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Rule 23(a) requires the following:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

1

(4) the representative parties will fairly and adequately protect the
interests of the class.

2

3

Fed. R. Civ. P. 23(a).  These factors are known as "numerosity," "commonality," "typicality,"

4

and "adequacy," respectively.  Rule 23(b) requires a plaintiff to establish one of the following: (1)

5

that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive

6

relief benefitting the class as a whole would be appropriate; or (3) that common questions of law

7

or fact predominate and the class action is superior to other available methods of adjudication.

8

Fed. R. Civ. P. 23(b).  Where the parties have entered into a settlement agreement before class

9

certification, district courts "must pay 'undiluted, even heightened, attention' to class certification

10

requirements...."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting

11

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  Statutory authority for

12

aggregating FLSA claims is found at 29 U.S.C. § 216(b).

13

As detailed below, the Court preliminarily and conditionally approves the following

14

classes for settlement purposes only,[3] subject to a final fairness hearing and certification of the

15

settlement class, under the Federal Rules of Civil Procedure, laws governing aggregation of

16

FLSA claims, and related case law:

17

The National FLSA Class: All current and past employees of named Defendants, DOES 1
to 10, and each of them who participated in or were paid income subject to the Tru Up

18

program alleged herein within the time period of the relevant statute(s) of limitation.

19

The California Class: Those class members who performed work for Defendants, DOES 1

20

to 10, and each of them such that the sub-class members' work was regulated by the

21

California Labor Code (e.g. resided in and worked in California, or otherwise performed

22

non-trivial amounts of work in California).

23

*a. Rule 23(a)*

24

First, numerosity is met where the number of claimants is so numerous that joining them

25

all would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the combined California Class and

26

27

[3]      Pursuant to the Amended Settlement Agreement, Defendants have reserved their right to
object to and oppose Rule 23 certification and FLSA collective action status in the event the
Settlement is not finally approved for any reason.

28

1    FLSA Class include approximately 714 current and former employees.  (ECF No. 20-1 at 22.)

2    Joining all Class Members would result in unwieldy court proceedings, would cause duplication

3    in disclosures and discovery, and would complicate routine communications.  Given the total

4    number of 714 Class Members, numerosity is satisfied.

5           Second, a class has sufficient commonality "if there are questions of fact and law which

6    are common to the class."  Fed. R. Civ. P. 23(a)(2).  "The class members must share a 'common

7    contention . . . of such a nature that it is capable of classwide resolution — which means that

8    determination of its truth or falsity will resolve an issue that is central to the validity of each one

9    of the claims in one stroke.'"  *Fraser v. Wal-Mart Stores, Inc.*, No. 2:13-CV-00520-TLN-DB,

10   2016 WL 6208367, at *4 (E.D. Cal. Oct. 24, 2016) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564

11   U.S. 338, 350 (2011)).  "The commonality requirement is generally satisfied where 'the lawsuit

12   challenges a system-wide practice or policy that affects all of the putative class members.'"  *Id.*,

13   (citing *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985)).  Here, there are common

14   questions of fact and law arising from Class Members' employment with Cognizant, such as the

15   manner in which Plaintiff and Class Members were compensated, whether Tru Up was lawful,

16   what amounts were required in calculating the regular rate of pay for purposes of overtime,

17   whether Cognizant properly calculated the regular rate of pay, whether Class Members

18   worked overtime, whether Class Members recorded all overtime worked, whether Cognizant paid

19   all overtime wages due, whether Cognizant engaged in unfair or unlawful business practices as

20   Plaintiff alleges, and whether Class Members were entitled to overtime or were exempt from

21   FLSA overtime requirements under the computer exemption.  Therefore, the Court finds the

22   commonality requirement is met.

23          Third, "representative claims are 'typical' if they are reasonably co-extensive with those

24   of absent class members; they need not be substantially identical."  *Hanlon.*, 150 F.3d at 1020.

25   "The typicality requirement is designed to align the interests of the class and the class

26   representatives so that the latter will work to benefit the entire class through the pursuit of their

27   own goals."  *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998).  Here, Plaintiff was a

28   non-exempt employee whose overtime hours were allegedly paid at less than 1.5 times the regular

rate of compensation.  (ECF No. 20-1 at 23.)  Plaintiff asserts the same claims on behalf of himself and the Class Members.  Accordingly, the Court finds Plaintiff's claims are typical of the class.

Fourth and finally, a named representative meets Rule 23's adequacy requirement if he or she and class counsel have no interests adverse to the interests of the proposed Class Members and if they are committed to vigorously prosecuting the case on behalf of the class.  *Hanlon*, 150 F.3d at 1020; *Fraser*, 2016 WL 6208367, at *4.  Here, it appears Plaintiff and counsel have no adverse interests to those of the Class Members.  Indeed, Plaintiff seeks only the same relief as the class — recovery of alleged underpaid overtime.  Plaintiff's counsel are experienced lawyers with trial and class experience who have thus far devoted appropriate time and resources to the case.  (ECF No. 20-1 at 23.)  The Court has no reason to believe Plaintiff and counsel will not continue to devote appropriate resources to this action.  Therefore, the adequacy prerequisite of Rule 23(a) is met.

### b.  Rule 23(b)Predominance and Superiority

In addition to the Rule 23(a) requirements, certification requires that an action meet at least one of the requirements set forth in Rule 23(b).  *Hanlon*, 150 F.3d at 1022.  Here, the Court finds Rule 23(b)(3) is satisfied because (1) questions of law and fact common to the class predominate over individual determinations and (2) a class action is a superior method to other forms of adjudicating the matter.

Predominance is similar to the prerequisite of commonality, but requires the common issues to outweigh individual issues.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.  Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation."  *See Amchem v. Windsor*, 521 U.S. 591, 623 (2012).

Here, the Class definition requires that all California Class Members were eligible to receive Tru Up payments at any time during the California Class Period.  (ECF No. 20-1 at 25.)

1   Plaintiff contends that all claims in this action arise from Defendants' Tru Up compensation

2   policy under which Plaintiff alleges Defendants improperly calculated overtime compensation

3   and underpaid overtime to Plaintiff and Class Members.  Because all Class Members allegedly

4   were underpaid overtime under Tru Up, the proposed Classes are sufficiently cohesive and a

5   "common nucleus of facts and potential legal remedies dominates this litigation." *Hanlon*, 150

6   F.3d at 10225.  As such, the first requirement of Rule 23(b)(3) is met.

7        A class action is superior to individual actions where class certification "promotes

8   consistency and efficiency of adjudication."  *Fraser v. Wal-Mart Stores, Inc.*, No. 2:13-CV-

9   00520-TLN-DB, 2016 WL 6208367, at *6 (E.D. Cal. Oct. 24, 2016).  Here, a single adjudication

10  provides a consistent result for all Class Members and for Defendants for a single course of

11  Defendants' conduct.  Because the central issues are similar and overlapping for each Class

12  Member, resolving them at once is far more efficient than flooding the court with 714 individual

13  lawsuits.  Likewise, a class action is superior method for adjudicating the controversy, which

14  otherwise would involve relatively small individual damages claims that would be "uneconomic

15  for potential plaintiffs" since "litigation costs would dwarf potential recovery."  *Hanlon*, 150 F.3d

16  at 1022.  Therefore, the requirements of FRCP 23(b)(3) are satisfied.

17             *c.  FLSA Standards for Collective Action Status*

18        The FLSA allows employees to "litigate jointly if they (1) claim a violation of the FLSA,

19  (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing."

20  *Campbell, et al. v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018).  The Ninth Circuit

21  has additionally provided: "Party plaintiffs are similarly situated, and may proceed in a collective,

22  to the extent they share a similar issue of law or fact material to the disposition of their FLSA

23  claims."  *Id.* at 1117.  Determining whether putative class members are similarly situated "is

24  made using a fairly lenient standard, and typically results in 'conditional certification' of a

25  representative class.  District courts have held that conditional certification requires only that

26  plaintiffs make substantial allegations that the putative class members were subject to a single

27  illegal policy, plan or decision."  *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 471 (E.D. Cal.

28  2010) (citations omitted).

1    Here, the proposed Settlement meets the standard for approval of the collective FLSA

2    action.  First, the FAC alleges that Class Members were denied overtime pay, a right which is

3    protected under the FLSA, 29 U.S.C. § 207(a)(1).  Second, the Class Members were similarly

4    situated in that Plaintiff alleges the Tru Up program created a uniform and systemic manner of

5    underpayment of overtime such that all the Class Members share a similar issue of law and fact.

6    Third, the Amended Settlement provides for an appropriate opt-in process for FLSA Class

7    Members.  (*See* Minute Order (ECF No. 25); Response to Minute Order (ECF No. 26).)

8         **IV.    PRELIMINARY APPROVAL OF SETTLEMENT**

9              *a.  Rule 23(e)*

10    Rule 23(e) provides that "[a] class action shall not be dismissed or compromised without

11    the approval of the court . . . ."  Fed. R. Civ. P. 23(e).  The purpose of preliminary evaluation of

12    proposed class action settlements is to determine whether the settlement is within the "range of

13    reasonableness."  4 Newberg § 11.26.  In reviewing a settlement, it is not a court's province to

14    "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits

15    of the dispute. . . ."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

16    Instead a court should weigh the following factors: the strength of plaintiff's case; the risk,

17    expense, complexity, and likely duration of further litigation; the stage of the proceedings; and

18    the value of the settlement offer.  *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301

19    (E.D. Cal. 2011).  Given that some of these factors cannot be fully assessed until the court

20    conducts the final approval hearing, "a full fairness analysis is unnecessary at this stage."  *See*

21    *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (citing *Alberto v. GMRI, Inc.*,

22    252 F.R.D. 652, 665 (E.D. Cal. 2008)).

23    Rather, Preliminary approval of a settlement and notice to the proposed class is

24    appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed,

25    noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant

26    preferential treatment to class representatives or segments of the class, and [4] falls within the

27    range of possible approval . . . ."  *Collins*, 274 F.R.D. at 301-02 (citing *In re Tableware Antitrust*

28    *Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *Singh v. Roadrunner Intermodal Servs.*,

1    *LLC*, No. 115-CV-01497, 2018 WL 2412325, at *4 (E.D. Cal. May 29, 2018) ("A settlement is

2    presumed fair if it 'follow[s] sufficient discovery and genuine arms-length negotiation.'")

3          First, the Parties here exchanged voluminous documents and information.  According to

4    the Motion, in addition to providing the total number Class Members and individual workweeks,

5    Defendants produced the payroll and hours data of every Class Member both during and

6    continuing beyond the claims period.  And Plaintiff produced all documentation from the named

7    Plaintiff including official company records, logs, and screenshots.  Plaintiff's counsel then

8    retained a forensic economist experienced in wage and hour disputes and had the expert review

9    and analyze the Class payroll data.  The Motion provides that the full data set was ultimately

10   examined by four attorneys, two paralegals, and a forensic economist.  The proposed Settlement

11   was then achieved after extensive negotiations, including a full day mediation.  Following the

12   unsuccessful mediation, the mediator offered a mediator's proposal to the Parties.  Plaintiff's

13   counsel negotiated further before accepting an offer.  For purposes of preliminary approval, the

14   Court is satisfied that the Settlement was the product of informed and arm's length negotiations.

15         Second, the Court finds the proposed Settlement does not include any of the "obvious

16   deficiencies" which would disqualify it from provisional approval.  *See Singh*, 2018 WL 2412325

17   at *4.  More specifically, as indicated in the terms summarized above, the proposed Settlement

18   contains no red flags such as an unreasonably discounted settlement amount, inflated attorney's

19   fees, reversion of funds to Defendant, undue burden on Class Members who wish to exclude

20   themselves, release of unrelated claims, or an excessive incentive award for the Class

21   Representative.  Moreover, the proposed Settlement provides for effective class administration by

22   an experienced claims administrator selected after appropriate investigation and bidding.

23         Third, there is nothing to suggest that the Settlement improperly grants preferential

24   treatment to Class Representatives or segments of the Class.  To the contrary, the named Plaintiff

25   receives the same relief as all the other Class Members, aside from any enhancement payment the

26   Court may award.  Moreover, all Class Members are treated identically in that they receive a pro-

27   rated share of the total California Class Fund and/or FLSA Class Fund based on their respective

28   California and/or FLSA Class Member Individual Workweeks.

Fourth and finally, in order to determine whether a settlement falls well within the range of possible approval, a court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 302 (E.D. Cal. 2011) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).  In the instance case, Plaintiff estimates that the claims present maximum damages of $11,219,891 based on the time and payroll records.  The proposed Settlement recovers $5,726,000, which is 51% of the estimated damages for overtime hours.  Defendants deny that Plaintiff and/or the Class Members are entitled to any damages and have raised several defenses.  There is therefore apparent risk in moving forward with the litigation.  Moreover, absent settlement, there is a risk the class would not be a certified and that the putative Class Members would not recover anything.  In balancing risk versus benefit, the Court finds the Settlement provides meaningful relief within the bounds of reason.

In sum, it appears to the Court on a preliminary basis that the proposed Amended Settlement Agreement is the product of serious, informed, noncollusive negotiations; it has no obvious deficiencies; it does not improperly grant preferential treatment to class representatives or segments of the class; and it falls within the range of possible approval.  The proposed Amended Settlement Agreement is therefore preliminarily approved.

### b.  FLSA Standards

FLSA collective actions also require court approval for settlement.  *See McManus v. City of Ceres*, No. 117-CV-00355DADBAM, 2018 WL 4262126, at *1 (E.D. Cal. Sept. 6, 2018).  Approval may be granted where "the settlement is a fair and reasonable resolution of a bona fide dispute." *Id.*  "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Id.*  Courts typically evaluate the fairness of FLSA settlements using benchmarks similar to those used in Rule 23 settlements. *Id.* at *2.  A "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.*

///

1   Here, as set forth above, the Court finds the proposed Settlement is a fair and reasonable.

2   The Parties dispute the legality of Tru Up, whether Defendants properly calculated overtime,

3   whether Defendants paid all overtime wages due to Class Members, and whether Class Members

4   worked overtime or merely over-recorded overtime to counteract the timing of pay under Tru Up.

5   (ECF No. 20-1 at 32.)  Consequently, the Court finds the proposed Amended Settlement is fair

6   reasonable in light of the claims and potential risks of continuing litigation and is conditionally

7   approved.

8   **V.   REQUEST TO APPOINT SETTLEMENT ADMINISTRATOR**

9   Plaintiff requests the Court appoint ILYM Group, Inc. as the qualified administrator.

10   Plaintiff provides that counsel reviewed and evaluated multiple firms as potential Settlement

11   Administrators in this matter, solicited bids from two firms, and accepted ILYM's bid which was

12   the lowest.  (ECF No. 20-1 at 32.)  ILYM bid the administration of this Settlement for $26,510.

13   (ECF No. 20-1 at 32.)  The proposed Settlement seeks administration costs not to exceed $30,000.

14   The Court orders and appoints ILYM Group, Inc. to act as Settlement Administrator in this

15   action.

16   **VI.   REQUEST TO APPROVE CLASS NOTICE**

17   "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

18   *Hanlon*, 150 F.3d at 1025.  Class members must be informed of the terms of the settlement.  Fed.

19   R. Civ. P. 23(e).  More specifically, "[a] class action settlement notice 'is satisfactory if it

20   generally describes the terms of the settlement in sufficient detail to alert those with adverse

21   viewpoints to investigate and to come forward and be heard."  *Singh*, 2018 WL 2412325, at *11

22   (citing C*hurchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004)).

23   Where, as here, certification occurs at the same time as proposed settlement, class

24   members must also be provided with notice of certification as required under Rule 23(c)(2)(B).

25   Rule 23(c)(2)(B) requires that notice be directed to class members using "the best notice that is

26   practicable under the circumstances," and must include the following information: (1) the nature

27   of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4)

28   that a class member may enter an appearance through an attorney if the member so desires; (5)

that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3).

The Court has reviewed the proposed Notices and finds both the California and FLSA Notices meet each of the above requirements.  More specifically, the California Notice fairly, plainly and adequately advises California Class Members of (1) the terms of the Settlement; (2) the automatic distribution of the California Award to California Settlement Class Members; (3) how to receive payment electronically in lieu of receiving checks via U.S. Mail; (4) the amount of the California Individual Settlement Payment expected to be paid (including the California Award and the FLSA Award); (5) how to dispute the number of workweeks upon which their California Individual Settlement Payments will be based; (6) the Released California and FLSA Claims; (7) the conditional certification of the California and FLSA Classes; (8) the Preliminary Approval of the Settlement; (9) the procedures for submitting a valid Exclusion Letter to opt out of the California Class; (10) the procedures for objecting to the Settlement and appearing at the Final Approval Hearing; (11) the procedures for submitting a timely FLSA Claim Form to opt in to receive an FLSA Award; and (12) the date set for the Final Approval Hearing.  The Court further finds that the Notice clearly comports with all constitutional requirements, including those of due process.

Moreover, because this is a wage and hour class/collective action, Defendants have the most current contact information available for the Class Members, many of whom are still employed.  Mailing Class Members directly is therefore a practicable way to deliver the Notices. The Settlement Administrator will perform skip tracing on returned mail and will re-mail to an updated address.  According to the Motion, the Settlement Administrator will also maintain a website for Class Members that links to the Settlement Agreement, Notices, motions for approval, fee and expense awards, and other important documents in the case.

The FLSA does not expressly provide any notice requirements.  FLSA are opt-in claims in which each plaintiff is an actual plaintiff, not a class member.  *See* 29 U.S.C. § 216(b); *Campbell*, 2018 WL 4354379.  Here, however, the FLSA Notice nonetheless satisfies the requirements of

1    Rule 23.  The FLSA Notice informs the FLSA-only Class Members of (1) the terms of the

2    Settlement; (2) the procedures for submitting a timely FLSA Claim Form to receive an FLSA

3    Individual Settlement Payment; (3) how to receive payment electronically in lieu of receiving a

4    check via U.S. Mail; (4) the amount of the FLSA Individual Settlement Payment expected to be

5    paid; (5) how to dispute the number of workweeks upon which their FLSA Individual Settlement

6    Payment will be based; (6) the Released FLSA Claims; (7) the conditional certification of the

7    FLSA Class; (8) the Preliminary Approval of the Settlement; and 9) the date set for the Final

8    Approval Hearing.  The Court further finds that the Notice clearly comports with all

9    constitutional requirements, including those of due process.  This provides ample notice to FLSA-

10   only Class Members allowing for an informed choice.  Accordingly, the Court approves both the

11   California Notice and FLSA Notice.

12           **VII.    REQUEST TO APPOINT CLASS COUNSEL**

13           Pursuant to Rule 23(g), Plaintiff moves to appoint Joshua H. Watson and John T. Stralen

14   of Clayeo C. Arnold, APC as Class Counsel.  (ECF No. 20-1 at 35–36.)  Rule 23(g) focuses on

15   the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the

16   representative parties adequately represent the interests of the Class Members.  *See* Fed. R. Civ.

17   P. 23.  While a court may consider any factor concerning the proposed class counsel's ability to

18   "fairly and adequately represent the interest of the class," Rule 23 specifically calls for

19   consideration of: "(i) the work counsel has done in identifying or investigating potential claims in

20   the action; (ii) counsel's work experience in handling class actions, other complex litigation, and

21   the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv)

22   the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

23           In this matter John Stralen and Joshua Watson of Clayeo C. Arnold met with named

24   Plaintiff Mr. Mishra, investigated his claims, filed the Complaint, met and conferred with

25   Defendants regarding their motion to dismiss, filed the First Amended Complaint, obtained and

26   analyzed Class Member data, retained and consulted with a qualified expert, appeared for

27   mediation, negotiated resolution of the case, and assisted in drafting the Settlement Agreement

28   and related papers.  (ECF No. 20-1 at 36.)  Both John Stralen and Joshua Watson are experienced

in wage and hour, class action, and high value litigation.  According to Plaintiff, Mr. Stralen is a subject matter expert in wage and hour law, while Mr. Watson is experienced in class action procedure.  Counsel has committed sufficient resources to the action thus far, and the Court has no reason to question counsel's dedication, knowledge, or competency.  Accordingly, the Court preliminarily approves John T. Stralen and Joshua H. Watson of Clayeo C. Arnold, APC as Class Counsel for the purposes of approving this Settlement.

**VIII.   REQUEST TO APPOINT CLASS REPRESENTATIVE**

Plaintiff additionally requests that the Court appoint Plaintiff Debi Mishra as Class Representative.  (ECF No. 20-1 at 37.)  Mr. Mishra initiated this case, and from the outset agreed in writing that it would be pursued as a class action.  (ECF No. 20-1 at 37.)  The Court finds Mr. Mishra is an adequate representatives of the settlement class.  Plaintiff provides that he does not have conflicts with the Class Members.  Further, it appears to the Court that Plaintiff has prosecuted the action vigorously up to this point and nothing indicates he will not continue to do so.  The Court therefore preliminarily approves Mr. Mishra as class representative for the purpose of approving this Settlement.

**IX.   IMPLEMENTATION SCHEDULE**

With good cause shown, the Court hereby approves and orders the following implementation schedule:

| Date/Triggering Event: | Event: |
|---|---|
| Order Granting Preliminary Approval | Court orders preliminary approval of Amended Settlement and conditional certification of Classes. |
| 15 business days after Preliminary Approval | Deadline for Defendants to provide the Class Member List to Settlement Administrator. |
| 10 business days after receipt of Class Member List | Deadline for Settlement Administrator to mail Notice Packets. |
| 30 days after Notice Packet mailed | Last day for any California Class Member to object to the Settlement or request exclusion from the California Class. |
| 60 days after Notice Packet mailed | Last day for FLSA Class Members to opt in. |
| 10 days after the Exclusion Deadline | Last Day for Settlement Administrator to provide Plaintiffs with a complete and accurate list of all California Class Members who have timely requested exclusion from the California Class. |
| October 6, 2020 | Last Day for Class Counsel to file Motion for Final Approval. |

## X.   FINAL APPROVAL HEARING AND CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's Unopposed Motion for Provisional Certification of Class Action; Preliminary Approval of [Amended] Settlement; Setting Hearing for Final Approval; and Associated Appointments (ECF No. 20).  The Court

hereby sets a hearing for final approval of the Amended Settlement Agreement and certification

of the settlement class on **November 12, 2020**, at 2:00 p.m., with briefs and supporting

documentation to be filed no later than **October 6, 2020**.  Such briefs shall include a motion

seeking approval of Class Counsel's Fees and Expenses, the Enhancement Payment to Plaintiff,

and the Administration Costs.  Class members who object in a timely manner, and in the manner

set forth in the Class Notice, may appear and present such objections at the fairness hearing in

person or by counsel.

Should the proposed Amended Settlement be approved, the Court shall enter judgment in

accordance with the Amended Settlement following the Final Approval Hearing.  Such judgment

will adjudicate the rights of all Settlement Class Members, including the named Plaintiff.  If for

any reason the Court does not grant final approval of the Amended Settlement Agreement, all

evidence and proceedings held in connection therewith shall be without prejudice to the status

quo and rights of the parties to the litigation.  The Parties will revert to their respective positions

as if no settlement had been reached at all.

The Court further orders that pending further order of this Court, all proceedings in this

matter except those contemplated herein and in the Stipulation of Settlement are stayed.

IT IS SO ORDERED.

DATED:  June 1, 2020

Troy L. Nunley
United States District Judge